## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **BUSH TRUCK LEASING, INC.** | ) | **Case No.**  1:20-cv-00511 |
| 6961 Cintas Boulevard | ) | |
| Mason, OH  45040 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| **ALL WAYS AUTO TRANSPORT, LLC** | ) | **COMPLAINT** |
| 4354 DiPaulo Center | ) | |
| Glenview, IL  60025 | ) | |
| | ) | |
| Yordan G. Georgiev | ) | |
| Statutory Agent | ) | |
| 4354 DiPaulo Center | ) | |
| Glenview, IL  60025 | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff, Bush Truck Leasing, Inc. ("BTL"), through counsel, for its Complaint against Defendant All Ways Auto Transport, LLC ("AW Transport") states the following:

### INTRODUCTION

1.      BTL brings this action to remedy AW Transport's willful and bad-faith breaches of contract. The Program Agreement between BTL and AW Transport requires AW Transport to refer its network of existing and prospective drivers exclusively to BTL for financing of their trucks. The Program Agreement requires AW Transport to withhold from the pay of its drivers the amounts owed to BTL under the financing and related agreements between BTL and the drivers, and to promptly remit those withheld amounts to BTL. And the Program Agreement requires AW Transport to promptly notify BTL of idle trucks and missing drivers, to help BTL locate and repossess idle trucks, to find replacement drivers for idle trucks (and make up to 6

months of guaranteed rental payments while it is diligently doing so), and to keep trucks properly maintained and make necessary repairs while searching for replacement drivers and before finally returning trucks to BTL, among other obligations. As outlined below, AW Transport has deliberately breached these obligations. As a direct and proximate result of AW Transport's numerous breaches of the Program Agreement, BTL has suffered at least approximately $1.8 million in damages, not including additional damages from lost lease revenue and other associated costs, which BTL is also entitled to recover.

## THE PARTIES

2.     Plaintiff Bush Truck Leasing, Inc. ("BTL") is an Ohio corporation with its principal place of business located at 6961 Cintas Boulevard Mason, OH  45040.

3.     All Way Auto Transport, LLC ("AW Transport") is a limited liability company organized under the laws of the state of Illinois. Upon information and belief, AW Transport has a single member who is a citizen of the state of Illinois.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity between the parties (BTL is a citizen of Ohio and no members of AW Transport are citizens of Ohio; upon information and belief, AW Transport has one member who is a citizen of Illinois).

5.     The Court has personal jurisdiction over the parties based on the parties' express and unequivocal consent in the Program Agreement. In addition, this lawsuit arises out of AW Transport purposefully transacting business in Ohio with an Ohio corporation.

6.     Venue is proper in this Court based on the parties' express and unequivocal consent in the Program Agreement. Moreover, venue is also proper pursuant to 28 U.S.C.

§ 1391(b) and (c) because a substantial part of the events giving rise to the claim occurred in this district, and because the Court has personal jurisdiction over AW Transport.

## FACTUAL BACKGROUND

### The Program Agreement

7.    On November 4, 2016, BTL and AW Transport entered into a Program Agreement, a true and accurate copy of which is attached as **Exhibit 1** to this Complaint.

8.    Through the Program Agreement, AW Transport agreed to provide BTL with exclusive access to its complete market of potential lessees of commercial trucks (by referring all existing or prospective independent contractors that want to obtain a truck or new truck to BTL), and AW Transport, in turn, gained access to a source of trucks for independent contractors.

9.    Pursuant to Section 1 of the Program Agreement, AW Transport agreed to "exclusively refer existing or prospective Independent Contractor[s] requiring financing or leasing of a Delivery Vehicle to BTL." (Program Agreement, **Ex. 1**, Section 1.)

10.    For independent contractors who obtained a truck and financing after referral to BTL, AW Transport agreed to withhold from its drivers' monthly payments a sum equal to the "sufficient pro-rata portion of monies representing Independent Contractor's gross monthly obligations due to BTL under financing, maintenance program or any other agreements between BTL and each Independent Contractor." (Program Agreement, **Ex. 1**, Section 3.) AW Transport promised to hold those withheld payments "in trust in a segregated account for the benefit of BTL," and to remit those withheld payments to BTL (or its assignee) "no later than the 20th day of each month on behalf of each Independent Contractor." (*Id.*) AW Transport also agreed that those payments "must include a detailed reconciliation in the event such Payments do not equal the total amount owed BTL by the Independent Contractors for any given billing period as set forth in BTL's monthly statements to [AW Transport]." (*Id.*)

11.　　Pursuant to Section 4 of the Program Agreement, upon an event of default by an independent contractor under his or her financing agreement, AW Transport agreed in relevant part to:

> . . . use **its best efforts to assist BTL with repossession of such Delivery Vehicle** (the "Repossessed Delivery Vehicle") on behalf of BTL and **to search for a suitable replacement** Independent Contractor. . . . [AW Transport] agrees that such Repossessed Delivery Vehicle **will be first in line to be leased** or refinanced to a replacement Independent Contractor either under a new contract or an assumption of the original contract. **While [AW Transport] is recruiting a replacement Independent Contractor**, [AW Transport] will rent the Repossessed Delivery Vehicle until the earlier of (i) such time as BTL or [AW Transport] finds a suitable replacement Independent Contractor to assume the lease or loan or enter into a new lease or loan agreement for the Repossessed Delivery Vehicle or (ii) 6 months following the applicable Event of Default ("the Guaranteed Rental Period.")

(Program Agreement, **Ex. 1**, Section 4) (emphasis added).

12.　　In other words, in the event of a default by an independent contractor, AW Transport expressly agreed to: i) assist BTL in repossessing the truck; ii) recruit a replacement independent contractor for that truck; and iii) also to make that truck the first in line to be leased or refinanced to a replacement independent contractor. Provided AW Transport fully complies with these and its other express contractual obligations, the Program Agreement provides for a 6-month Guaranteed Rental Period during which time AW Transport will cover rent until a truck can be reseated with another driver.

13.　　Consistent with its contractual obligations under Section 4 to recruit a replacement independent contractor and to make the associated truck first in line to be leased or refinanced,  AW Transport agreed in Section 5 to "promptly notify BTL in the event that . . . the arrangement between [AW Transport] and a[n] Independent Contractor is terminated, or if a[n] Independent Contractor is unexplainably absent for more than 10 days," and to "educate its management team on the importance of supporting BTL and its efforts to a) keep leases current,

b) keep trucks properly maintained, and c) recruit new independent contractors for repossessed trucks."

14.     During the Guaranteed Rental Period while AW Transport is performing the foregoing obligations, AW Transport also expressly agreed "to cause Repossessed Delivery Vehicles to be properly maintained and, if necessary, repaired in order to comply with a standard of ordinary wear and tear. . . ." (Program Agreement, **Ex. 1**, Section 4.)

15.     Section 4 of the Program Agreement provides for two options if AW Transport is unable to place the Repossessed Vehicle with another Independent Contractor during the Guaranteed Rental Period—assuming AW Transport has complied with all of its contractual obligations in attempting to do so. AW Transport can either pay BTL a per-diem rental rate to "continue to use or otherwise rent" the Repossessed Delivery Vehicle, or AW Transport "shall return such Repossessed Delivery Vehicle to BTL, normal wear and tear excepted."

16.     Importantly, upon the final return of a truck to BTL: "**Any repairs required by BTL** to bring a Repossessed Delivery Vehicle to acceptable condition, **in BTL's sole discretion**, normal wear and tear excepted, **shall be the responsibility of and paid for by [AW Transport]**." (Program Agreement, **Ex. 1**,  Section 4) (emphasis added). Thus, if AW Transport has performed all of its contractual obligations and the Guaranteed Rental Period has still expired without a replacement independent contractor, and if at that time AW Transport decides to no longer "continue to use or otherwise rent" the truck, AW Transport is required to perform all repairs to bring the truck back to acceptable condition before returning it to BTL.

### The AW Transport Program Leases

17.     There are thirty-two (32) leases that were originated pursuant to the Program Agreement with unexpired terms and trucks that have not been returned or repossessed by BTL

and taken out of the program (the "Active Leases"). The Active Leases are identified on the chart attached as **Exhibit 2** to this Complaint.

18.     There are fifty-one (51) leases that were originated pursuant to the Program Agreement with trucks that have been finally returned to or repossessed pursuant to Section 4 and taken out of the program (the "Inactive Recovered Truck Leases," together with the Active Leases, the "AW Transport Program Leases"). The Inactive Recovered Truck Leases are also identified on the chart attached as **Exhibit 2** to this Complaint.

### AW Transport's Breaches of the Program Agreement

19.     Despite its clear and unequivocal bargained-for obligations, AW Transport has repeatedly breached (and continues to breach) the Program Agreement.

20.     Even though AW Transport promised to refer existing or prospective independent contractors requiring financing or leasing exclusively to BTL, AW Transport has failed to do so.

21.     Although AW Transport agreed to withhold from its drivers' pay the amounts due BTL, to segregate those withheld payments, and to promptly remit those amounts to BTL, AW Transport has breached these obligations in Section 3 of the Program Agreement. AW Transport has wrongfully withheld, and kept for its own benefit, payments that should have been promptly remitted to BTL or its assignee.

22.     Indeed, numerous drivers have complained to BTL that AW Transport has withheld monthly amounts from their pay that were owed to BTL but then not submitted those payments to BTL. Moreover, on at least one occasion AW Transport went so far as to instruct a driver not to independently submit payments owed under his lease agreement to BTL (which the driver wanted to do to fulfill his lease obligations), fraudulently telling the driver that "BTL went under and [AW Transport] was handling it."

23.     In addition, AW Transport has breached Section 5 of the Program Agreement by

failing to promptly notify BTL of defaulted and absent independent contractors.

24.     Upon defaults by independent contractors under the AW Transport Program Leases, AW Transport has furthermore failed (and continues to refuse) to recruit suitable replacements and refer them to BTL, and has also failed (and continues to refuse) to make the trucks under the Active Leases the first in line to be leased or refinanced to replacement independent contractors, in breach of Section 4 of the Program Agreement. Furthermore, AW Transport has failed (and continues to refuse) to assist BTL in repossessing trucks from defaulted independent contractors. Upon information and belief, AW Transport has at times even taken steps to actively conceal the location of trucks from BTL.

25.     AW Transport has also failed to "educate its management team on the importance of supporting BTL and its efforts to a) keep leases current, b) keep trucks properly maintained, and c) recruit new independent contractors," in breach of Section 5 of the Program Agreement. Instead, AW Transport has refused to perform its contractual obligations for the AW Transport Program Leases, both before and after defaults by independent contractors, in a bad faith attempt to avoid its duties under the Program Agreement and wrongfully take money owed to BTL.

26.     AW Transport has further breached the Program Agreement by failing (and continuing to refuse) to make payments to BTL for the defaulted AW Transport Program Leases during the 6-month Guaranteed Rental Period.

27.     AW Transport has also failed (and continues to refuse) to fulfill its contractual obligations regarding the maintenance and repair of trucks. Specifically, in breach of Section 4, AW transported has refused to keep trucks "properly maintained, and if necessary, repaired" during the Guaranteed Rental Period, and also refused to make the "repairs required by BTL" to bring repossessed trucks taken out of the program "to acceptable condition, in BTL's sole

discretion." (Program Agreement, **Ex. 1**, Section 4.)

28.     Had AW Transport performed as required under the Program Agreement by training its management staff, searching for suitable replacements and referring them to BTL, making trucks associated with defaulted leases first in line, and fulfilling its maintenance and repair obligations, all the trucks associated with the AW Transport Program Leases would have been re-seated with new independent contractors within days or weeks of a default. But for AW Transport's bad faith breaches of the Program Agreement, no Program Leases would have reached the end of the Guaranteed Rental Period without being leased or re-financed to replacement independent contractors.

29.     As a direct and proximate result of AW Transport's numerous breaches of the Program Agreement, BTL has incurred over $333,000 in damages on the Active Leases from missed payments alone (*see* **Exhibit 2**), notwithstanding additional damages caused by AW Transport's failure to perform necessary maintenance/repairs, as well as lost future lease revenue BTL would have earned had AW Transport performed as promised, all of which BTL is additionally entitled to recover.

30.     As for the Inactive Recovered Truck Leases, to date BTL has suffered damages in excess of $995,000 on 32 of the 51 repossessed trucks as a direct and proximate result of AW Transport's numerous breaches of the Program Agreement. (*See* **Exhibit 2**.) These damages include the past due lease payments that AW Transport owes on these trucks, as well as the costs and repairs necessary to bring these vehicles "to acceptable condition, in BTL's sole discretion, normal wear and tear excepted" which "shall be the responsibility of and paid by [AW Transport]." (Program Agreement**, Ex. 1**, Section 4.) For the other 19 of the 51 trucks from the Inactive Recovered Truck Leases, BTL estimates additional damages of approximately

$500,000, which are yet to be calculated. Notably, like the Active Leases, the currently estimated damages from the 51 Inactive Recovered Truck Leases do not include lost future lease revenue BTL would have earned had AW Transport performed as promised, which BTL is additionally entitled to recover.

31.     BTL's damages increase each day AW Transport refuses to perform as promised in the Program Agreement.

### COUNT I:
### (Breach of Contract)

32.     BTL incorporates and restates the foregoing paragraphs of the Complaint as if fully rewritten.

33.     On November 4, 2016, BTL and AW Transport entered into the Program Agreement, which is a valid and enforceable contract. The Program Agreement therefore also contains an implied duty for the parties to act in good faith and deal fairly with each other, which requires not only honesty but also reasonableness in the performance of the contract.

34.     AW Transport has breached the Program Agreement and the implied covenant of good faith and fair dealing as it relates to the AW Transport Program Leases by, among other things:

(a)     Failing to exclusively refer existing and prospective independent contractors requiring financing or leasing to BTL in violation of Section 1 of the Program Agreement;

(b)     Failing to withhold, segregate, and promptly remit payments owed to BTL under financing, maintenance program, or other agreements between BTL and each independent contractor in violation of Section 3 of the Program Agreement;

(c)     Failing to promptly notify BTL if the arrangement between an independent contractor and AW Transport is terminated or an independent contractor is unexplainably absent for more than 10 days in violation of Section 5 of the Program Agreement;

(d)    Failing to assist BTL in locating and repossessing trucks after defaults by independent contractors, and instead actively concealing those trucks, in violation of Section 4 of the Program Agreement;

(e)    Failing to educate its management team on the importance of supporting BTL and its efforts to keep leases current, keep trucks properly maintained, and recruit new independent contractors in violation of Section 5 of the Program Agreement;

(f)    Upon defaults by independent contractors, failing to recruit replacement independents contractors for those trucks and make those trucks the first in line to be leased or financed by a replacement independent contractor in violation of Section 4 of the Program Agreement;

(g)    Failing to make lease payments to BTL during the 6-month Guaranteed Rental Period in violation of Section 4 of the Program Agreement; and

(h)    Failing to keep trucks "properly maintained, and if necessary, repaired" during the Guaranteed Rental Period, and also failing to make the "repairs required by BTL" to bring repossessed trucks taken out of the program "to acceptable condition, in BTL's sole discretion" in violation of Section 4 of the Program Agreement.

35.    BTL, on the other hand, has fully performed its obligations and not materially breached the Program Agreement.

36.    As a result of AW Transport's breaches of the Program Agreement and the implied covenant of good faith and fair dealing, BTL has incurred damages in excess of $75,000, which will be proven at trial.

37.    The breaches of contract and the implied covenant of good faith and fair dealing as alleged in the Complaint were willful and in bad faith because, inter alia, the obligations of the parties were clear and understood by AW Transport, AW Transport was aware its conduct would constitute a breach of contract and did so anyway, and AW Transport was aware it was in breach and took no efforts to remedy its breach. As a result of AW Transport's bad faith breaches of contract and the implied covenant of good faith and fair dealing, BTL is entitled to recover from

AW Transport its reasonable attorneys' fees and the costs of bringing this action.

## COUNT II:
### (Unjust Enrichment)

38.     BTL incorporates and restates the foregoing paragraphs of the Complaint as if fully rewritten.

39.     Pleading in the alternative, BTL conferred numerous benefits upon AW Transport by providing funding and access to trucks for its independent contractors, as well as maintenance and repairs and related services.

40.     AW Transport has retained the benefit of BTL's financing, supply of trucks, and maintenance and repairs and related services under circumstances where it would be unjust to do so without payment.

41.     As a direct and proximate result of AW Transport's conduct, BTL has been damaged in an amount in excess of $75,000, which will be proven at trial.

**WHEREFORE**, BTL respectfully requests that this Court:

(a)     Enter judgment in favor of BTL on Count I (Breach of Contract) and award damages in an amount to be proven at trial, plus attorneys' fees and costs;

(b)     Enter judgment in favor of BTL on Count II (Unjust Enrichment) and award damages in an amount to be proven at trial, plus attorneys' fees and costs; and

(c)     Award such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jacob D. Rhode
Jacob D. Rhode (0089636)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
jrhode@kmklaw.com
Phone: (513) 579-6400
Fax: (513) 579-6457

*Attorneys for Plaintiff Bush Truck Leasing, Inc.*