UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

Bush Truck Leasing, Inc.,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　: Case No. 1:20-cv-00511-SJD-KLL
　　　　　Plaintiff,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　: Judge Susan J. Dlott
　　vs.　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
All Ways Auto Transport, LLC,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　Defendant.　　　　　　　　　　　　　:

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

### [JURY DEMAND ENDORSED HEREIN]

**NOW COMES** All Ways Auto Transport, LLC (the "Defendant"), in Answer to Bush Truck Leasing, Inc.'s (the "Plaintiff") Complaint, stating as follows:

1. Defendant denies the allegations in paragraph 1 of the Complaint.

2. Defendant admits the allegations in paragraph 2 of the Complaint.

3. Defendant admits the allegations in paragraph 3 of the Complaint.

4. Defendant admits the allegations in paragraph 4 of the Complaint.

5. Defendant admits the first allegation in paragraph 5 of the Complaint, and denies the second.

6. Defendant admits the allegations in paragraph 6 of the Complaint.

7. Defendant admits the allegations in paragraph 7 of the Complaint. In defense of Plaintiff's allegations under the Program Agreement, Defendant has asserted counterclaims because the Plaintiff breached the Program Agreement by failing to perform its Route-Ready Maintenance Agreements (defined below) with Defendant's independent-contractor drivers. Specifically, Defendant's liability under the Program Agreement is based on the enforceability of Plaintiff's

1

Leases (defined below) and Route-Ready Maintenance Agreements with Defendant's independent-contractor drivers. Plaintiff breached those Route-Ready Maintenance Program Agreements by, inter alia, failing to schedule and perform the manufacturers' regularly scheduled maintenance and failing to timely schedule or approve other required repairs, resulting in, inter alia, the loss of use of the leased trucks, the loss of Defendant's drivers, and lost profits (hereinafter generally "Defendant's Counterclaims").

8. Defendant denies the allegations in paragraph 8 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

9. Defendant denies the allegations in paragraph 9 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

10. Defendant denies the allegations in paragraph 10 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

11. Defendant denies the allegations in paragraph 11 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

12. Defendant denies the allegations in paragraph 12 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

13. Defendant denies the allegations in paragraph 13 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's

Counterclaims.

14. Defendant denies the allegations in paragraph 14 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

15. Defendant denies the allegations in paragraph 15 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

16. Defendant denies the allegations in paragraph 16 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

17. Defendant denies the allegations in paragraph 17 of the Complaint.

18. Defendant denies the allegations in paragraph 18 of the Complaint.

19. Defendant denies the allegations in paragraph 19 of the Complaint.

20. Defendant denies the allegations in paragraph 20 of the Complaint.

21. Defendant denies the allegations in paragraph 21 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

22. Defendant denies the allegations in paragraph 22 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

23. Defendant denies the allegations in paragraph 23 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

24. Defendant denies the allegations in paragraph 24 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

25. Defendant denies the allegations in paragraph 25 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

26. Defendant denies the allegations in paragraph 26 of the Complaint.

27. Defendant denies the allegations in paragraph 27 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

28. Defendant denies the allegations in paragraph 28 of the Complaint.

29. Defendant denies the allegations in paragraph 29 of the Complaint.

30. Defendant denies the allegations in paragraph 30 of the Complaint because the allegations fail to quote the entire Program Agreement clause alleged, and are further defeated by Defendant's Counterclaims.

31. Defendant denies the allegations in paragraph 31 of the Complaint.

## COUNT I:
### (Breach of Contract)

32. Defendant restates its Answers to paragraphs 1 through 31 as though fully set forth herein.

33. Defendant denies the allegations in paragraph 33 of the Complaint.

34. Defendant denies the allegations in paragraph 34 of the Complaint.

35. Defendant denies the allegations in paragraph 35 of the Complaint.

36. Defendant denies the allegations in paragraph 36 of the Complaint.

37. Defendant denies the allegations in paragraph 37 of the Complaint.

## COUNT II:
### (Unjust Enrichment)

38. Defendant restates its Answers to paragraphs 1 through 37 as though fully set forth herein.

39. Defendant denies the allegations in paragraph 39 of the Complaint.

40. Defendant denies the allegations in paragraph 40 of the Complaint.

41. Defendant denies the allegations in paragraph 41 of the Complaint.

42. Defendant denies all allegations in the Complaint that are not specifically admitted herein.

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that the Complaint be dismissed, with prejudice, that it be awarded its costs and expenses, including attorneys' fees, and that the Court award such additional and further relief, at law or at equity, that the Court deems just or equitable.

## DEFENDANT ALL WAYS AUTO TRANSPORT, LLC'S AFFIRMATIVE DEFENSES

1. Plaintiff's claims fail because it fraudulently induced Defendant into signing the Program Agreement as specifically alleged in Defendant's Counterclaims.

2. Plaintiff's claims are barred, in whole or in part, by the doctrine of setoff or recoupment as specifically alleged in Defendant's Counterclaims.

3. Plaintiff's damages, if any, are a result of its own conduct.

4. Plaintiff's damages, if any, are a direct and proximate result of the conduct of others, or of unforeseen conduct, for which Defendant is not liable.

5. Plaintiff failed to mitigate its damages.

6. Plaintiff's claims are barred, in whole or in part, by its unclean hands, its bad faith, or the doctrine *in pari delicto.*

7. Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, and/or

laches.

8. Plaintiff's claims are barred, in whole or in part, by the failure of a condition precedent.

9. Defendant asserts all affirmative defenses set forth in Civil Rules 8, 9, and 12 that are supported by the facts, whether known or unknown at this time, and specifically reserves the right to assert any and all affirmative defenses that arise or become known to Defendant through the course of discovery. Defendant further reserves the right to amend its Answer and plead additional or more specific defenses as warranted by the facts determined through the conclusion of the discovery process.

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that the Complaint be dismissed, with prejudice, that it be awarded its costs and expenses, including attorneys' fees, and that the Court award such additional and further relief, at law or at equity, that the Court deems just or equitable.

## DEFENDANT
## ALL WAYS AUTO TRANSPORT, LLC'S
## COUNTER CLAIMS

**NOW COMES** All Ways Auto Transport, LLC (hereinafter "AWA"), for its counterclaims against Bush Truck Leasing, Inc. (hereinafter "Bush"), stating as follows:

### INTRODUCTION

1. This case arises from the fraud that Bush perpetrated on AWA and its drivers.

2. For a trucking business like AWA, keeping drivers on the road is paramount. Therefore, trucking companies need to ensure that their drivers' trucks are well-maintained and that those trucks will be promptly repaired when they break down.

3. The typical driver, however, lacks the experience and expertise to understand the preventative maintenance needed for his or her truck. Trucking companies such as AWA therefore

rely on leasing companies like Bush to establish a maintenance program for drivers.

4. In October and November of 2016, Bush represented that it had a full-service maintenance program that, among other things, (1) included preventative, scheduled maintenance; (2) provided 24-hour support to drivers; and (3) ensured drivers would benefit from bulk-repair discounts obtained by Bush.

5. These representations were false—and Bush knew it. In truth, Bush did not have the staff to run a full-service maintenance program and had no intention of providing the maintenance program it advertised.

6. AWA reasonably relied on these representations in signing the Program Agreement, and AWA did not learn of Bush's fraud until after the Program Agreement was executed and AWA discovered that drivers were not receiving preventative maintenance, 24/7 support, or timely repairs. Because Bush failed to perform preventative maintenance, minor repairs become major repairs, and drivers were left stranded for extended periods of time and then billed for repairs that ran into the tens of thousands of dollars. Unfortunately, drivers that faced such substantial repair bills often just left AWA.

7. Bush's fraud has not only devasted AWA's business but has also devastated the businesses of AWA's truck drivers, who depend on their rigs to support themselves and their families. With this counterclaim, AWA seeks to recover the damages it has sustained, including (1) the revenue AWA lost from drivers who have had to sit idle when Bush failed to timely authorize repairs; (2) the hundreds of thousands of dollars AWA advanced to drivers for repairs and for lease payments; (3) the highly qualified AWA drivers who quit based on the misconduct of Bush addressed herein; and (4) the costs AWA incurred to recruit, train, and pay new drivers.

## COUNT I: FRAUD

8. All Ways Auto Transport, LLC is an Illinois limited liability company with its principal place of business in the City of Glenview, County of Cook, in the State of Illinois. On November 1, 2016, and thereafter, Jordan Georgiev was and is AWA's authorized Member.

9. Bush Truck Leasing, Inc. is an Ohio corporation with its principal place of business in the City of Mason, Ohio. In 2016, Michael A. Bush was Bush's President and CEO.

10. Leading up to November 1, 2016, Michael Bush and Jordan Georgiev were in negotiations related to leases for Bush's trucks, Bush's Route-Ready Maintenance Program for its leased trucks, and Bush's sponsorship program for exclusive rights to AWA's independent-contractor drivers (hereinafter the "Drivers" or "AWA's Drivers").

11. In October and November 2016, Michael Bush and others at Bush repeatedly made representations regarding Bush's maintenance program to Jordan Georgiev (both orally and in writing).

12. As an example, on November 1, 2016, Michael A. Bush emailed Jordan Georgiev with Bush's "Capabilities Brochure." *See* Exhibit 1. Bush stated in its Capabilities Brochure that its Route-Ready Maintenance Program is a "Managed Maintenance Program [that provides] preventative services and repairs," including the following:

    a. All Preventative Maintenance
    b. Breakdown Repairs
    c. Replacement Tires
    d. Rental
    e. 24/7 Emergency Road Service

13. On November 3, 2016, Michael A. Bush emailed Jordan Georgiev with Bush's "Program Guide." *See* Exhibit 2. The Bush Program Guide touted Bush's "industry leading maintenance program" and referenced that program on multiple pages, including on page 8, where Bush states

"What's Covered" under the program, including:

- a. All Preventive Maintenance (based on manufacturers recommendations)
- b. All repairs (excluding repairs due to abuse, misuse or accident)
- c. Normal maintenance items such as brakes, clutch adjustment, fluid changes, etc.
- d. Tire replacements & alignments due to normal wear
- e. Access to 24 Hour Emergency Road Service
- f. Retention and documentation of maintenance history
- g. Vehicle Inspections (DOT & State)

14. Bush also entered into leases with AWA's Drivers ("Leases"), as well as other lease-related agreements, and those Leases and lease-related agreements similarly included representations regarding Bush's maintenance program. *See* Exhibit 3. Specifically, the Service and Maintenance Program Agreement between Bush and the Drivers ("Route-Ready Maintenance Agreement") states the following:

BTL agrees to provide a full service maintenance program during the term of the Agreement including:

A. All Preventative Maintenance (based on manufacturers recommendations)
B. All repairs (excluding repairs due to abuse, misuse or accident)
C. Access to 24 Hour Emergency Road Service.
D. Replacement of tires (as required from normal wear-Maximum of 2 sets)
E. Retention and documentation of maintenance history
F. Reimbursement for substitute vehicles during extended service period.

15. The Route-Ready Maintenance Agreement further stated that Bush would "use any volume buying power that it has to negotiate discounts and the most competitive prices from third party providers, to keep maintenance costs as low as possible."

16. In 2016, and continuing through 2020, Bush promoted its Route-Ready Maintenance Program through its website at https://www.bushtrucks.com/index.php/pages/maintenance. *See* Exhibit 4. On its Maintenance Program page, Bush states, inter alia, the following:

- a. MAINTENANCE PROGRAM
    - i. The Bush Truck Maintenance Program is designed to keep your truck properly maintained and on the road through mobile services, the largest network of

service providers and proactive communication.

   ii. First, based on mileage, we determine the maintenance requirements for your truck(s) and ensure those funds are allocated through simple automatic deduction.

   iii. From there, our dedicated Maintenance Team does the rest !

b. REDUCED DOWNTIME THROUGH MOBILE SERVICES

   i. Our extensive mobile repair capabilities—700+ dedicated mobile technicians and 400+ mobile service trucks—enable repairs can be done [sic] onsite which increases up-time and eliminates time spent in line at dealerships.

   ii. Onsite services include. 97 point PM/DOT inspection that helps identify small problems before they become major issues.

   iii. The mobile service advantage

   1. Your truck never leaves your lot
   2. DVIRs are handled onsite
   3. Safety items are handled on site without taking the truck out of service
   4. Truck remains current on PMs [i.e., preventative maintenance]
   5. Mobile technicians have access to repair / service history to see all work that's been done.

c. THE BEST SERVICE NETWORK AVAILABLE !

   i. Our network of maintenance and repair coverage continues to grow !
   ii. More than 5,000 national and local vendors
      1. Full service maintenance facilities
      2. OEMS
      3. Tire centers
      4. Glass repair shops
      5. Body & paint shops
      6. Brake centers
      7. Specialized service providers
   iii. 700+ dedicated mobile technicians
   iv. 400+ mobile service trucks
   v. 25 full-service shops

d. PROACTIVE COMMUNICATION !

   i. Our dedicated maintenance team contacts you directly when your vehicle is due for preventive maintenance services !

1. We will work with you directly to schedule best time and location to have the maintenance services performed.
2. Our 24/7 maintenance call center will manage the repair process, provide authorization of services, issue payments and provide ongoing status updates to you.
3. Our systems also track repair history.

   e. The Bush Maintenance Program is designed to minimize maintenance costs while maximizing vehicle performance. And did you know that, at the end of the lease term any money remaining in the Maintenance Account is refunded to you !

17. In October and November 2016, Michael Bush also made numerous oral representations to Jordan Georgiev regarding Bush's Route-Ready Maintenance Program, including that the program (1) included preventative, scheduled maintenance; (2) provided 24-hour support to drivers; and (3) ensured drivers would benefit from bulk-repair discounts obtained by Bush.

18. These representations were material to AWA's decision to sign the Program Agreement.[1] In the trucking industry, drivers are a trucking company's main asset, due to the costs of recruitment, training, and for performance. Good drivers are paid well, and successful trucking companies work to minimize the downtime of their drivers. To give just one example, to reduce idle time for its drivers, AWA hires seasoned dispatchers who ensure that drivers aren't forced to wait for loads.

19. Further, in the trucking industry, if a driver's main tool (his truck) is inoperative due to breakdowns caused by a lack of preventative maintenance and/or untimely repairs, the driver can't make any money and may leave his employment.

20. On November 4, 2016, in justifiable reliance on Bush's factual representations that it had a full-service maintenance program and would perform, inter alia, all preventative maintenance

---

[1] In fact, because Bush did not provide discounted lease rates to AWA's Drivers (and even charged Drivers well in excess of the value of the vehicles), AWA would only benefit from the Program Agreement if Bush provided the advertised maintenance.

and timely repairs to the Drivers' trucks, AWA executed the Program Agreement with Bush. *See* Exhibit 5.

21. Within the first 6 months after November 2016, the Drivers' trucks began breaking down and becoming inoperable. When the Drivers attempted to contact Bush on its 24-hour hotline for repairs, they were not able to get ahold of anyone after normal business hours, on weekends, or on holidays. When the Drivers were able to contact Bush, Bush caused unreasonable and excessive delays in authorizing the required repairs, which led to the Drivers' trucks sitting idly for days, weeks, or months at a time. This resulted in the Drivers losing the use of their trucks, which caused the Drivers to lose revenue at an unreasonable rate, which in turn caused, at an unreasonable rate, the Drivers to quit their employment with AWA and abandon their trucks for better opportunities. For examples of problems caused by deficiencies in Bush's maintenance program, *see* Exhibits 6, 7, and 8.

22. In addition, Bush failed to perform even the basic manufacturers' preventative maintenance on the Drivers' trucks under the Route-Ready Maintenance Agreement.

23. Bush also failed to pass along the bulk discounts that it promised. On the contrary, Bush (or its representative, Dickinson Fleet Services, LLC) appears to have inflated the invoices it received from repair shops.

24. Upon information and belief, to conceal the actual costs for repairs, Bush directed its repair shops not to provide AWA or its drivers with invoices for repair work. However, on occasion, Bush's repair shops would make a mistake and send an invoice directly to a driver. As an example, one repair shop, on October 31, 2019, sent a driver an estimate for $ 3,858.75 to repair vehicle 1FUJGLD58 FLGB9662. *See* Exhibit 9. The next day, Dickinson Fleet Services, LLC (on behalf of Bush), sent the driver an invoice for $4,547.62 for the same repairs. *See* Exhibit 10.

25. On November 4, 2016, Bush knew that its maintenance-related representations were false because, among other things, Bush did not have a maintenance program that (1) included preventative, scheduled maintenance; (2) provided 24-hour support to drivers; and (3) ensured drivers would benefit from bulk-repair discounts obtained by Bush. In fact, Bush did not even have the staff to appropriately run such a full-service program.

26. Bush made the above-referenced maintenance-related representations to induce the AWA into entering into the Program Agreement and the Drivers to enter into the Leases and the Route-Ready Maintenance Agreement.

27. AWA reasonably and justifiably relied on those false representations in entering into the Program Agreement.

28. As a direct and proximate result of Bush's fraud, AWA has suffered damages because, among other things, it has: (a) lost revenue from drivers who have had to sit idle when Bush failed to timely authorize repairs; (b) advanced hundreds of thousands of dollars to drivers for repairs and for lease payments; (c) lost highly qualified drivers who quit based on the misconduct of Bush addressed herein; and (d) incurred costs relating to recruiting, training, and paying new drivers.

29. AWA's damages will be more specifically proven at trial but are reasonably believed to be in excess of $75,000.

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that judgment be granted in its favor and against Bush Truck Leasing, Inc. as follows:

A. Compensatory damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

B. Punitive damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

C. Costs and expenses, including reasonable attorneys' fees;

    D. Pre- and post-judgment interest; and,

    E. Any other relief, at law or in equity, that the Court deems just or equitable.

## **COUNT II: BREACH OF CONTRACT**

30. AWA hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

31. AWA and Bush entered into a contract, which consisted of the Program Agreement and the maintenance-related promises made by Bush ("Contract").

32. AWA performed on the Contract.

33. Bush, however, failed to perform on the Contract by, among other things, failing to provide a functional maintenance program.

34. As a direct and proximate result of Bush's breach of contract, AWA has suffered damages because it has (1) lost revenue from drivers who have had to sit idle when Bush failed to timely authorize repairs; (2) advanced hundreds of thousands of dollars to drivers for repairs and for lease payments; (3) lost highly qualified drivers who quit based on the misconduct of Bush addressed herein; and (4) incurred costs relating to recruiting, training, and paying new drivers.

35. Those damages will be more specifically proven at trial but are reasonably believed to be in excess of $75,000.

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that judgment be granted in its favor and against Bush Truck Leasing, Inc. as follows:

    A. Compensatory damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

    B. Punitive damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

    C. Costs and expenses, including reasonable attorneys' fees;

D. Pre- and post-judgment interest; and,

E. Any other relief, at law or in equity, that the Court deems just or equitable.

### COUNT III: UNJUST ENRICHMENT

36. AWA hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

37. Because Bush failed to provide the promised maintenance program, AWA's drivers spent thousands of hours off the road.

38. When those drivers were unable to generate revenue for their businesses, AWA had no choice but to advance them funds to pay for their leases and for repairs.

39. Those funds, in turn, were paid to Bush.

40. Accordingly, AWA conveyed benefits on Bush.

41. Given that Bush failed to comply with its maintenance-related promises, Bush's retention of these benefits would be unjust.

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that judgment be granted in its favor and against Bush Truck Leasing, Inc. as follows:

A. Compensatory damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

B. Punitive damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

C. Costs and expenses, including reasonable attorneys' fees;

D. Pre- and post-judgment interest; and,

E. Any other relief, at law or in equity, that the Court deems just or equitable.

### COUNT IV
### VIOLATIONS OF OHIO'S DECEPTIVE TRADE PRACTICES ACT

42. AWA hereby incorporates by reference, as if fully set forth herein, each and every

allegation set forth in the preceding paragraphs.

43. By making the maintenance-related misrepresentations addressed above, Bush violated R.C. § 4165.02(A)(7), (9), and (12), which prohibit a person from representing that goods or services have characteristics or benefits that they do not have; from representing that goods or services are of a particular standard, quality, or grade if they are not; and from making false statements of fact concerning the existence or amounts of price reductions.

44. Bush willfully engaged in these practices in violation of R.C. § 4165.02, knowing those practices to be deceptive.

45. As a direct and proximate result of Bush's ODTPA violations, AWA has suffered damages because, among other things, it has (1) lost revenue from drivers who have had to sit idle when Bush failed to timely authorize repairs; (2) advanced hundreds of thousands of dollars to drivers for repairs and for lease payments; (3) lost highly qualified drivers who quit based on the misconduct of Bush addressed herein; and (4) incurred costs relating to recruiting, training, and paying new drivers.

46. Those damages will be more specifically proven at trial but are reasonably believed to be in excess of $75,000

**WHEREFORE**, All Ways Auto Transport, LLC respectfully requests that judgment be granted in its favor and against Bush Truck Leasing, Inc. as follows:

A. Compensatory damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

B. Punitive damages, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;

C. Costs and expenses, including reasonable attorneys' fees;

D. Pre- and post-judgment interest; and,

E. Any other relief, at law or in equity, that the Court deems just or equitable.

Respectfully submitted,

/s/ Rick L. Ashton
Rick L. Ashton (0077768), Trial Attorney
Jeffrey R. Corcoran (0088222)
Allen Stovall Neuman Fisher & Ashton LLP
17 South High Street, Suite 1220
Columbus, OH 43215
T: 614-221-8500   F: 614-221-5988
ashton@asnfa.com; corcoran@asnfa.com

and

/s/ Robert S. Reda (pro hac vice)
Reda & Des Jardins, LLC
736 N. Western Avenue, Suite 353
Lake Forest, Illinois 60045
T: (877) 809-4567
F: (224) 232-8897
Email: service@rdlawyers.com
*Counsel for Defendant All Ways Auto Transport, LLC*

**JURY DEMAND**

All Ways Auto Transport, LLC, through its counsel, hereby demands a trial by jury on all issues so triable.

/s/ Rick L. Ashton
Rick L. Ashton

# CERTIFICATE OF SERVICE

       I hereby certify that the foregoing has been served upon the following parties via the Court's e-filing notification system on September 21, 2020:

Jacob D. Rhode
Joseph B. Womick
Keating Muething & Klekamp PLL
One East Fourth Street, Suite 1440
Cincinnati, OH 45202
T: 513) 579-6580
F: (513) 579-6457
jrhode@kmklaw.com
jwomick@kmklaw.com
*Counsel for Plaintiff/Counterclaim Defendant*
*Bush Truck Leasing, Inc.*

                                                 /s/ Rick L. Ashton
                                                 Rick L. Ashton