UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BUSH TRUCK LEASING, INC.,** | ) | Case No. 1:20-cv-00511-SJD-KLL |
| | ) | |
| Plaintiff, | ) | Judge Susan J. Dlott |
| | ) | |
| -v- | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| **ALL WAYS AUTO TRANSPORT, LLC,** | ) | |
| | ) | |
| Defendant. | ) | **BUSH TRUCK LEASING, INC.'S** |
| | ) | **REPLY IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS** |

I.      **INTRODUCTION**

In its Opposition, Defendant All Ways Auto Transport, LLC ("AW") seeks to circumvent the fundamental flaws with its Counterclaims by principally pointing to alleged "maintenance representations," which AW argues provide a legal basis for each of its claims. AW's arguments fail to save its Counterclaims from dismissal.

Start with AW's breach of contract claim. AW alleges the so-called "maintenance representations" were "material" to the Program Agreement between the parties, but fails to explain why such material representations were not then included in the Program Agreement between the parties that covers the same subject matter. The reason is simple—the parties did not agree to these purported "maintenance representations," which contradict the parties' fully integrated agreement and depend upon contingent and divergent agreements between BTL and various third-party drivers, not AW. AW's fraud claim is similarly defective. Whether AW characterizes it as "fraud in the inducement," "promissory fraud," or something else entirely, the bottom line is that the pleadings establish there is no actionable claim against BTL as a matter of

law. AW's other miscellaneous claims, for unjust enrichment and violation of the Ohio Deceptive Trade Practices Act, also fail to state a claim for relief.

For the reasons explained below and in BTL's motion and memorandum in support, all of AW's Counterclaims should be dismissed.

## II. ARGUMENT

### A. AW's Breach of Contract Claim Fails Under the Parol Evidence Rule

AW first argues the parol evidence rule does not apply because the maintenance-related representations fraudulently induced AW to enter into the Agreement. (Opp., Doc. 19 at 15.) As the Ohio Supreme Court held in a case cited by AW, fraudulent inducement "asserts that a misrepresentation of facts *outside the contract* or other wrongful conduct induced a party to enter into the contract." *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 502 (1998) (emphasis added). "Simply put, a claim for fraud in the inducement must be premised on matters *extrinsic to the written contract*." *Paragon Networks Int'l v. Macola, Inc.*, 1999 Ohio App. LEXIS 2091, *10, 1999-Ohio-766 (Ohio Ct. App. April 28, 1999) (emphasis added). Here, AW expressly argues the promises were "part of the complete AWA-Bush Contract" (Opp., Doc. 19 at 17); that Bush's maintenance promises were the "only benefit" AW received from the contract (Counterclaims, Doc. 9 at n1); and that these representations were "material" to the contract (*Id.* at 5). AW's argument that the maintenance-related representations are "part of" and "material" to the purported contract and not external to it is fatal to any purported claim of fraudulent inducement. After all, it is well-established that "[p]arties may not prove fraud by claiming that the inducement to enter into an agreement was a promise that was within the scope of the integrated agreement but was ultimately not included in it." *Bollinger, Inc. v. Mayerson*, 116 Ohio App. 3d 702, 712 (Ohio Ct. App. 1996); (BTL Mot., Doc. 16 at 9).

AW next asserts the contract is only partially integrated and that only evidence of inconsistent terms are barred under the parol evidence rule. The maintenance-related promises, AW argues, are consistent with the terms of the Agreement and thus admissible. AW is wrong for at least three reasons.

First, the Program Agreement is fully integrated as to the parties' maintenance related obligations.[1] AW suggests the mere reference to the "Maintenance Program" in the Program Agreement renders the contract ambiguous as to what duties the parties owe with respect to this Maintenance Program. (Opp., Doc. 19 at 16.) The plain text of the Program Agreement provides otherwise. As it relates to the Maintenance Program, the parties agreed: 1) that upon both any default of a driver and also upon final return of trucks, *AW was the party solely responsible* for maintenance and repair of the trucks (Doc. 1-1 at Section 4); 2) that for maintenance during times that were not AW's exclusive responsibility, AW would either "endorse" BTL's maintenance program, or require its drivers obtain approval if they use alternative maintenance services (*Id*. at Section 2); and 3) that any such contract or arrangement for maintenance would be independently agreed upon by BTL *and the independent contractor* (*Id*. at Sections 3, 7 (referencing the separate "agreements between BTL and each Independent Contractor")). The terms are fully integrated.

Second, even if the agreement is partially integrated, AW misinterprets the parol evidence rule to suggest only contradictory terms are inadmissible. That's only part of the standard. Where the agreement is partially integrated, "any such collateral agreement must not contradict the terms of the written agreement, *and the agreement must be one that would naturally be omitted from the*

---

[1] AW's citation to a single-page, open-ended, unilaterally-issued sale invoice at issue in a separate lawsuit involving BTL only proves BTL's argument here. (Opp., Doc. 19 at 2, 11.) Far from a single-page "invoice" unilaterally issued by one party without any of the elements of an enforceable contract and itself referencing other sale documents, here the Program Agreement was negotiated and executed by both parties, and outlines the entirety of the parties' relationship and responsibilities.

*written instrument.*" *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St. 3d 546, 554 (2009) (Cupp, J., concurring) (emphasis added) (quoting *Pingue v. Durante*, No. 95APG09-1241, 1996 Ohio App. LEXIS 1857, at *9 (Ohio Ct. App. May 9, 1996); *see also Chase Home Fin., LLC v. Literski*, 2014-Ohio-615, ¶ 17 (Ohio Ct. App. Feb. 21, 2014). Thus, even consistent terms are inadmissible if they are terms that would not naturally have been omitted from the written agreement. AW cannot credibly argue the alleged maintenance-related representations would "naturally be omitted" from the Program Agreement—particularly because *AW alleges* these same terms were "material" to and "part of the AWA-Bush Contract" (Opp., Doc. 19 at 17) and that AW "would only benefit from the Program Agreement if [BTL] provided the advertised maintenance." (Counterclaims. Doc. 9 at n1.) Moreover, the Program Agreement provides AW's intent to enter into the agreement was to "facilitate the financing and/or leasing . . . of delivery vehicles" by acting as financial sponsor for drivers who may not have been approved for financing without AW's sponsorship. (Doc. 1-1 at pg. 1.) As the Program Agreement explicitly sets forth the consideration received by AW—that its drivers are able to obtain financing through sponsorship—it is not "natural" that additional alleged maintenance-related consideration would be omitted from the Program Agreement if that was part of the bargain between AW and BTL (and it was not).

Third, the alleged maintenance-related representations violate the parol evidence rule even under AW's incorrect statement of the law because those purported terms also contradict the terms of the Program Agreement. AW asserts that BTL "has not claimed . . . that the Maintenance Representations squarely contradict any of the provisions in the Program Agreement." (Opp., Doc. 19 at 11.) Yet that is exactly what BTL argued in its Motion. (*See, e.g.*, Doc. 16 at 2, 4, 9, 18.) AW's argument that BTL's "Maintenance Representations" are consistent with the Program Agreement is wrong. AW posits that its maintenance related obligations only materialize "after a

driver defaults," thus leaving open the question of the parties' maintenance related obligations "while the trucks are in the Drivers' possession." (Opp., Doc. 19 at 11.) Not so. The Program Agreement expressly imposes obligations on AW, imposes no obligations on BTL, and clearly states the obligations at other times will be subject to contingent, separate agreements between BTL and the drivers. In fact, one such separate agreement between BTL and a driver that AW attaches to its Counterclaims makes clear the maintenance obligations are exclusively the obligation of the *driver, not BTL*. (*See* Lease Agreement, Doc. 9-3 at §§ 6, 9, 15.) Had the parties agreed upon "maintenance-related obligations" borne by BTL, they would have been included in the Program Agreement, just as AW's were.

### B. AW Cannot Create A Claim for Breach of Alleged Agreements Between BTL and Third-Party Drivers

In likely recognition that it has no claim for breach of contract under the Program Agreement, AW suggests in its Opposition that it somehow has a right to bring a breach of contract claim as a "third-party beneficiary" to one or more separate maintenance agreements that BTL entered into independently with drivers. (Opp., Doc. 19 at 14–15.) AW did not assert such a third-party beneficiary claim in its Counterclaims, and cannot amend its pleadings by way of opposition brief. *See, e.g., Meikle v. The Edward J. Debartolo Corp.*, No. 00-CA-58, 2001 Ohio App. LEXIS 5130, *11 (Ohio Ct. App. Nov. 7, 2001) ("The complaint does not allege that Appellant is a third party beneficiary to any contract. Consequently, Appellant's complaint was properly dismissed under Civ.R. 12(B)(6)[.]"); *see also Stanton v. Countrywide Home Loans*, No. 1:12-CV-12182012, U.S. Dist. LEXIS 186928, *9 (N.D. Ohio Oct. 18, 2012) (plaintiff lacked standing where complaint failed to allege he was a party or third-party beneficiary to the agreement).

Even if AW had plead such a claim (and it did not), the Counterclaims do not contain sufficient detail to establish the existence and specific terms of any contract between BTL and a

5

single driver from which AW can assert an alleged third-party interest. The most AW alleges is that BTL "also entered into leases with [AW]'s Drivers . . . as well as other lease-related agreements," and attached an un-executed maintenance agreement between a driver and BTL. (Counterclaims, Doc. 9 at ¶ 14.)

Moreover, to be a third-party beneficiary, AW must prove "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Divine Tower Int'l Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A*., No. 2:04-cv-494, 2008 U.S. Dist. LEXIS 85246 (S.D. Ohio Sep. 24, 2008). Under the intent to benefit analysis, "[t]he mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract is insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." *Hill v. Sonitrol of Southwestern Ohio*, 36 Ohio St. 3d 36, 36 (1988). "Generally, the parties' intention to benefit a third-party will be found in the language of the agreement." *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 200 (2011). AW does not and cannot meet this standard.

In *Taylor v. Honda Motorcars, Inc*., 135 N.E.3d 1284, 1289 (8th Dist. 2019), for example, the court held a wife was not third-party beneficiary to an auto-lease between her husband and the auto dealer, despite allegations the dealer knew the car was being purchased for the wife's use and despite the fact the wife selected the car at the dealership. The Court held the husband was the only party to the lease and the wife's use of the car was simply an incidental benefit. *Id*.; *see also Beckemeyer v. Gelco Corp.,* 2020 U.S. Dist. LEXIS 18409, *5 (S.D. Ohio Jan. 31, 2020) (employee was not intended beneficiary of "Master Lease" or "Maintenance Addendum" between employer and vehicle dealer).

The facts here are even more tenuous. The only parties to any alleged maintenance

6

agreement are BTL and the driver, and that agreement and the lease agreement between BTL and the driver make clear that the driver, not BTL, bears the obligation to ensure the truck is properly maintained. (*See, e.g.*, Lease Agreement, Doc. 9-3 at §§ 6, 9, 15; Service and Maintenance Program Agreement, Doc. 9-3, pg. 7 ("Contractor agrees to properly maintain and perform the preventative maintenance on this vehicle . . . Furthermore, preventative maintenance must be up-to-date before any other repairs will be authorized.").) BTL's performance under the maintenance agreement does not "satisfy a duty owed by [BTL] to [AW]." *Hill,* 36 Ohio St. 3d. at 40. And neither AW nor any other company for whom a given driver might happen to deliver freight with the truck it procured from BTL are mentioned as intended beneficiaries of the lease agreement or service and maintenance program agreement. There is simply no "intention to benefit [AW] found in the language of the agreement[s]" between BTL and drivers, and therefore no actionable claim by AW that it is somehow an intended third-party beneficiary. *Huff*, 130 Ohio St.3d at 200.

### C. AW's Fraud Claim Fails

AW contends it has stated two plausible claims for fraud: (1) fraud in the inducement and (2) promissory fraud. AW's claim for fraud in the inducement fails for the reasons stated above.[2] AW insists the promissory fraud relates to "the contract itself" and that at the time BTL made the maintenance-related promises in the contract, it had "no intention of providing [them]." (Opp., Doc. 19 at 7–8.) AW's argument fails. AW argues the promissory fraud relates to promises "in the contract itself"; yet AW points to no provision in the Program Agreement imposing any maintenance-related obligations on BTL. As its sole attempt to resolve this discord, AW explains "[t]he only reasonable inference is that [BTL] had no intention of performing when it executed the

---

[2] As BTL explained in its Motion to Dismiss, the so-called "maintenance-related promises" that form the basis of AW's breach of contract claim (Count II) are the same as the so-called "maintenance-related representations" that form the basis of the fraud in the inducement claim (Count I).

7

Program Agreement" because BTL "did not even have the staffing to make good on its maintenance promises." This alleged "inference" in no way addresses the complete absence of any maintenance related obligations in the Program Agreement itself, other than those owed by AW.

Moreover, the alleged promissory fraud is not "consistent with the written instrument." *Galmish v. Cicchini*, 90 Ohio St. 3d 22, 29 (Ohio 2000). For all the reasons set forth above and in BTL's opening memorandum in support, any promise by BTL that it "would provide preventative maintenance" to all drivers is plainly contradicted by the unambiguous terms of the Program Agreement. The Program Agreement makes clear that, for maintenance during periods not exclusively AW's responsibility, AW would simply either "endorse" BTL's maintenance program for potential use by its drivers, or alternatively require that drivers obtain approval from BTL to use different services. (Doc. 1-1 at Section 2.) All such maintenance programs and services would be governed by, and subject to, separate agreements with prospective, contingent terms between BTL and those drivers. (*See, e.g. id*. at Section 3 (noting the separate "financing, maintenance program or other arrangements between BTL and each independent contractor"); *id*. at Section 7 (same); BTL Marketing Material, Doc. 9-1 (noting various prospective options and services for drivers who chose BTL's maintenance program); Driver Lease Agreement, Doc. 9-3 at §§ 6, 9, 15 (outlining driver's responsibilities for maintenance and repairs); Driver Service and Maintenance Program Agreement, Doc. 9-3.)) In other words, the Program Agreement makes clear BTL's program is not required for all drivers and the prospective terms of that maintenance program or any other is governed by separate, contingent agreements distinct from the clearly agreed upon duties between AW and BTL.

The contingent nature of the separate maintenance agreements between BTL and any drivers alone renders AW's claim of promissory fraud void. *See, e.g., Galmish,* 90 Ohio St. 3d at

30 (parol evidence rule precludes evidence of promissory fraud "which contradicts an integrated written agreement. . . By the same token, 'if the *written contract provides for the doing of an act on a certain condition, the promisee cannot show that the promise was an absolute one merely by claiming fraud, unless he produces some other evidence of the alleged fraud*.") (Emphasis added). In other words, any maintenance related obligations by BTL and the driver were contingent upon the driver and BTL agreeing to enter into a maintenance agreement. Indeed, the Program Agreement contemplates the drivers may also use something other than BTL's maintenance program. (Doc. 1-1 at Section 2). BTL could not have manifested a present "intention [not] to perform" as to these indefinite and contingent matters. *See, e.g.*, *Westwinds Dev. Corp. v. Outcalt*, 2009-Ohio-2948, ¶¶ 58-59 (Ohio Ct. App. Jun 19, 2019) (holding plaintiff could not "transform [a] conditional promise into an absolute one simply by claiming fraud").

Apart from the parol evidence rule, AW failed to state a claim for fraud under the heightened pleading standard of Rule 9. AW argues it properly alleged the "who, what, when, where, and how" of the fraud by affixing BTL's online advertisements to its Counterclaims. (Opp., Doc. 19 at 8–9.) However, AW fails to identify where, in any of these advertisements, it states that BTL "would perform, inter alia, all preventative maintenance and timely repairs" for all drivers referred by AW. (Counterclaims, Doc. 9 at ¶¶ 20, 25.) Indeed, the example lease agreement between a driver and BTL attached to the Counterclaims says just the opposite, namely, that the *driver* will complete all preventative maintenance and necessary repairs. (Lease Agreement, Doc. 9-3 at §§ 6, 9, 15.) AW's vague assertion about a promise that was made by some unknown person at an undeterminable time, and which is contradicted by the very example agreement attached to its Counterclaims, does not satisfy the heightened pleading standard of Rule 9.

Further, to the extent AW relies on the advertisements as the source of its fraud, these

9

representations are mere puffery. *See, e.g., Marable v. Michael J. Auto Sales*, 2013-Ohio-1750, ¶ 14 (Ohio Ct. App. May 1, 2013). AW tries to refute this legally compelled conclusion by arguing "BTL either had a maintenance program . . . or it did not." (Opp., Doc. 19 at 10.) AW's Counterclaims make no such argument. All of AW's allegations concern the quality of BTL's maintenance program and BTL's alleged failure to perform at the quality of service advertised. (*See, e.g.* Counterclaims, Doc. 9 at ¶7 ("Bush failed to *timely* authorize repairs"); ¶23 (Bush "inflated invoices" on services it provided through the maintenance program).

### D. AW's Unjust Enrichment Claim Fails as a Matter of Law

In its Opposition, AW attempts to re-write its Counterclaim to now argue AW made "payments directly to Bush." (Opp.. Doc. 19 at 19.) However, AW's Unjust Enrichment claim states that AW "advanced funds" "to drivers" who, "in turn," then remitted these payments to BTL. (Counterclaims, Doc. 9 at ¶¶38–39.) This type of indirect benefit cannot give rise to a claim of unjust enrichment. *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 2020-Ohio-2694, ¶¶ 12-17 (Ohio Ct. App. April 28, 2020); *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005).

Even if AW could rely on Opposition allegations not within the pleadings—and it cannot—AW's unjust enrichment claim still fails. AW alleges it made "direct payments" to Bush as evidenced by Doc. 1-1, Program Agreement, § 3. This section, however, discusses AW's obligation to withhold pay from the drivers to satisfy the drivers' monthly obligations due to BTL under financing or maintenance agreements. In this regard, AW was not conferring a benefit on BTL. It simply acted as an intermediary to confer a benefit *from the driver* to BTL.

Finally, AW argues claims for unjust enrichment may be plead as an alternative claim "despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality." (Opp., Doc. 19 at 18.) Although unjust enrichment may be pled as an alternative in the

presence of fraud, AW's claim of fraud cannot survive and therefore, neither can its claim for unjust enrichment. *See, e.g., Metz v. Am. Elec. Power Co.*, 172 Ohio App. 3d 800, 802, 877 N.E.2d 316, 317 (Ohio Ct. App. 2007) ("A plaintiff cannot prevail on an unjust enrichment claim in the absence of fraud . . .").[3]

### E. AW Fails to State a Claim for Relief under the ODTPA

For all the reasons AW's fraud claim should be dismissed, so too should its claim under the Ohio Deceptive Trade Practices Act (ODTPA). Further, as an Illinois limited liability company, BTL argued that AW does not have standing to pursue its ODTPA claim. In response, AW relies on the choice of law provision in the Program Agreement. (Opp., Doc. 19 at 20.) AW's ODTPA claim, however, relates to the maintenance representations in BTL's online advertisements. The choice of law provision in the Program Agreement does not govern BTL's purported online representations or the separate maintenance agreements entered into between BTL and third-party drivers.

AW also asserts courts "have allowed non-Ohio plaintiffs to proceed on ODTPA claims", relying on *Schumacher v. State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618, 621, 627 n.11, & 630-633 (S.D. Ohio 2014). (Opp., Doc. 19 at 20.) However, *Schumacher* does not reach that conclusion. In that case, the court simply addressed whether a consumer is an "individual" under the ODTPA. *Id*. at 630-633. Footnote 11 in *Schumacher*, relied on by AW, relates to the court's discussion on which law applies to the common law tort claims in the class action, not the consumer statute. *Id*. at 624, 627. AW cannot invoke Ohio's consumer protection laws simply because it transacted with an Ohio corporation. *Loreto v. P&G*, 737 F. Supp. 2d 909, 917 (S.D. Ohio 2010).

---

[3] This was the conclusion of the court in the separate lawsuit involving BTL that AW again confusingly cites in support of its argument. *Bush Truck Leasing, Inc., v. Cummins, Inc.,* S.D. Ohio No. 18-cv-871, Doc. 31 at pgs. 18–19.

11

### III. CONCLUSION

For the foregoing reasons, and the reasons stated in BTL's motion and memorandum in support, this Court should grant BTL's Motion and dismiss AW's Counterclaims in their entirety.

Respectfully submitted,

*/s/ Jacob D. Rhode*
Jacob D. Rhode (0089636) (Trial Attorney)
Joseph B. Womick (0097743)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
jwomick@kmklaw.com
Phone: (513) 579-6528
Fax: (513) 579-6457

*Attorneys for Plaintiff Bush Truck Leasing, Inc.*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were served upon all counsel of record via the Court's CM/ECF system on this 7th day of December, 2020.

*/s/ Jacob D. Rhode*
Jacob D. Rhode