UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BUSH TRUCK LEASING, INC.,          Case No. 1:20-cv-511
    Plaintiff,                                 Dlott, J.
                                          Litkovitz, M.J.
    vs.

ALL WAYS AUTO TRANSPORT, LLC,     **ORDER**
    Defendant.

This matter is before the Court on non-party FleetPride Inc.'s (FleetPride's) motion to quash the third-party subpoena (Doc. 73-9) issued by defendant All Ways Auto Transport, LLC (AWA). (Doc. 76). Plaintiff Bush Truck Leasing, Inc. (BTL) filed a response in support of FleetPride's motion and raised additional grounds for quashing the third-party subpoena. (Doc. 78). AWA filed a memorandum in opposition to the motion to quash. (Doc. 82). FleetPride filed a reply. (Doc. 83). The matter is ripe for review.

**I.    The Subpoena**

In the subpoena, AWA seeks:

1. All agreements between you and [BTL] reflecting discounts or rebates that you have provided or offered to [BTL] for any maintenance, repairs, parts and/or other services that you have provided to [BTL].

2. All account statements (whether monthly, quarterly, etc.), invoices, bills, receipts, and other documents reflecting discounts or rebates that you have provided to [BTL] for any maintenance, repairs, parts and/or other services that you have provided to [BTL].

3. All agreements between you and Dickinson reflecting discounts or rebates that you have provided or offered to Dickinson for any maintenance, repairs, parts and/or other services that you have provided to Dickinson.

4. All account statements (whether monthly, quarterly, etc.), invoices, bills, receipts, and other documents reflecting discounts or rebates that you provided to Dickinson for any maintenance, repairs, parts and/or other services that you have provided to Dickinson.

(Doc. 73-9 at PAGEID 726-27).

**II.     Arguments**

FleetPride argues that this third-party subpoena is "not limited by any time period, geographic location or subject matter, rendering the requests overbroad[ ] and not likely to lead to the discovery of relevant information[,]" and seeks "trade secret and highly confidential" information. (Doc. 76 at PAGEID 800). FleetPride proffers the declaration of its attorney, Kimberly Winnubst, describing her unsuccessful efforts to reach an agreement to narrow the scope of the subpoena with counsel for AWA. (*See* Doc. 76-2). FleetPride also proffers the declaration of its Director of Credit, Steven Stockseth, who estimates that compliance with the third-party subpoena as issued would require 80-120 employee hours. (Doc. 76-3, PAGEID 818 at ¶ 8). Mr. Stockseth also states that the "agreement between FleetPride and Dickinson is subject to a confidentiality clause" and that that agreement, as well as invoices issued to Dickinson, include "pricing and discount strategies." (*Id.* at ¶ 10).

In BTL's response in support of FleetPride's position, it offers two additional bases for quashing the subpoena. First, BTL notes that the written discovery deadline passed on February 28, 2023 (*see* Doc. 67), and the undersigned's Standing Order on Civil Procedures requires that "[d]iscovery requests . . . be made at such time that responses thereto are due before the discovery deadline." M.J. Karen L. Litkovitz Standing Order on Civil Procedures, § I.D, available at www.ohsd.uscourts.gov/FPLitkovitz [https://perma.cc/F7ZD-B9MF]. As such, BTL argues that the subpoena is untimely. Second, BTL argues it did not receive prior notice of the of the subpoena as required under Fed. R. Civ. P. 45(a)(4).[1]

---

[1] This subsection reads:

> *Notice to Other Parties Before Service.* If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.

2

In its opposition, AWA argues that it has agreed to narrow the scope of the subpoena to (1) only agreements "between FleetPride and Dickinson relating to discounts and rebates[,]" and (2) only invoices that "FleetPride sent to Dickinson for maintenance service related to the [AWA] trucks after November 4, 2016" and that correspond to the VIN numbers attached as Exhibit 1. (Doc. 82 at PAGEID 854; *see also* Doc. 82-1). AWA argues that the attorney-eyes-only (AEO) designation requested by FleetPride to protect its trade secrets and confidential information is not warranted because the protective order in this case provides sufficient protection, AWA is not a competitor of FleetPride, and an AEO designation would interfere with AWA's representation of its client. With respect to BTL's arguments, AWA responds that a short extension of the written discovery deadline is warranted; AWA complied with Fed. R. Civ. P. 45(a)(4); and even if it did not, the spirit of that Rule has been satisfied because BTL had an opportunity to raise its objections prior to FleetPride's production.

In its reply, FleetPride notes that AWA expressly refers to Dickinson as BTL's "agent" (*see* Doc. 82 at PAGEID 853-54); as such, FleetPride argues that BTL—a party—should have access to this same information, and a non-party should therefore not be burdened with the request. FleetPride also argues that an AEO provision is necessary because AWA does business with many of FleetPride's competitors, and FleetPride has "no reason to believe that the financial information discerned from its agreement/invoices would not be provided to any of the 1,600 service locations that [AWA] partners with in order to undercut or match the pricing" it offers. (Doc. 83 at PAGEID 871). Finally, FleetPride argues that an AEO provision is necessary because the protective order in this case allows disclosure of their confidential information to a

---

Fed. R. Civ. P. 45(a)(4).

3

"broad category" of people to be determined by counsel for the parties to the lawsuit without consulting FleetPride. (*Id.* at PAGEID 871).

### III. Analysis

"When a subpoena is directed at a nonparty . . . the court must first decide whether the party moving to quash the subpoena has standing." *Schaumleffel v. Muskingum Univ.*, No. 2:17-cv-463, 2019 WL 3071851, at *2 (S.D. Ohio July 15, 2019). A party will not generally have standing to quash a subpoena directed at a nonparty unless it has "a personal right or privilege with regards to the documents sought." *Id.* (quoting *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, No. 1:11-cv-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013)). "Only the party to whom the subpoena is directed has standing to oppose it." *Davis*, 2013 WL 146362, at *5 (citation omitted). While BTL did not file the motion to quash the subpoena, it raises arguments in support of that result in its response. Given the foregoing authority, the Court declines to consider BTL's arguments and addresses only the substantive arguments raised by FleetPride.

Fed. R. Civ. P. 45 governs third-party subpoenas. *Riccardi v. Jackson*, No. 2:21-cv-211, 2021 WL 4272065, at *2 (S.D. Ohio Sept. 21, 2021). This Rule "permits parties in legal proceedings to command a non-party to . . . produce documents. . . ." *Id.* (citing Fed. R. Civ. P. 45(a)(1)). Upon a timely motion to quash, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . or [] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), and (iv). Because it seeks to quash the subpoena, FleetPride "bears the ultimate burden of proof." *Meyer v. Bank of Am., N.A.*, No. 2:18-cv-218, 2018 WL 6436268, at *2 (S.D. Ohio Dec. 7, 2018) (quoting *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)).

A. <u>Undue burden</u>

FleetPride raised an undue burden argument in its opening motion, stating that "there is no unduly burdensome way to limit the search [for documents responsive to the subpoena] to Bush or Dickinson." (Doc. 76 at PAGEID 803). In its opposition, AWA agreed to limit the scope of its request for invoices to only those related to particular VIN numbered trucks after November 4, 2016. (Doc. 82 at PAGEID 854). In reply, FleetPride does not state whether the proposed limitations on the time period and particular trucks at issue continue to pose the same burden as initially argued (i.e., 80-120 man-hours of its employees' time (*see* Doc. 76-3, PAGEID 818 at ¶ 8)). FleetPride has not demonstrated that the more limited subpoena presents an undue burden. *See In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) ("Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'") (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

In its opposition, AWA also represents that it agreed to limit the scope of its request to cover the agreements and invoices between FleetPride and Dickinson—not also the agreements and invoices between FleetPride and BTL. (*Compare* Doc. 76-1 at PAGEID 811-12 *with* Doc. 82 at PAGEID 854). This appears to address the concern raised by FleetPride in reply—that it should not be required to produce documents as a non-party that a party-opponent could provide. *See In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) ("[The issuing party] must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party."). For its argument that BTL

5

can provide the documents requested, FleetPride appears to rely entirely on AWA's reference to Dickinson as BTL's "agent" in its opposition. The Court is not persuaded, however, that BTL necessarily has the information that AWA seeks through its proposed and more limited requests by the mere fact that AWA refers to Dickinson as BTL's "agent." In *CareSource*, the Court found that an undue burden existed where counsel for the party-opponent averred that it had been asked for virtually the identical documents that the issuing party was now requesting of the third-party. *See id.* FleetPride offers no such evidence here, and the Court therefore declines to quash the subpoena on this basis.

B. AEO provision

AWA does not appear to dispute that the information requested by its subpoena may include trade secret and confidential information; instead, AWA challenges whether an AEO designation is necessary on top of the protective order issued in this case (Doc. 21). (*See* Doc. 82 at PAGEID 855-56). For an AEO designation, the proponent:

> must identify with sufficient particularity the harm it will suffer. "In the business context, such a showing requires 'specific demonstrations of fact, supported where possible by affidavits and concrete examples.'" [*Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-0993, 2012 WL 5948363, at *4 (S.D. Ohio Nov. 28, 2012)] (quoting *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)). AEO designation can be justified upon a specific factual showing that "especially sensitive information is at issue or the information is to be provided to a competitor." *United States ex rel. Daugherty v. Bostwick Labs.*, No. 1:08–cv[-]354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (quoting *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07-2657, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008)).

*Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio 2014).

AWA argues that it is not FleetPride's competitor. In reply, FleetPride argues that AWA's "website touts that it 'partner[s] with over 1,600 service locations nationwide[.]'" (Doc. 83 at PAGEID 871 (quoting AW Transport, https://www.aw-transport.com/drivers.html

6

[https://perma.cc/W37A-DU7H].)). FleetPride goes on to argue that it has "no reason to believe" that any trade secret or confidential information would not be provided to those partners. (*Id.*). FleetPride also argues that the protective order entered in this case allows for disclosure of such information to various recipients without FleetPride's prior agreement. FleetPride points to three subparagraphs of the protective order in particular. First, the protective order provides for disclosure of documents designated as "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" to "employees, directors, officers, or managers" of the parties "but only to the extent necessary to further the interest of the parties in this litigation." (Doc. 21, PAGEID 194 at ¶ 6(b)(4)). It also allows disclosure of such documents to:

> interviewees, potential witnesses, deponents, hearing or trial witnesses, and any other person, where counsel for a party to this action in good faith determines the individual should be provided access to such information in order for counsel to more effectively prosecute or defend this action (as long as the disclosure occurs in the presence of counsel, and copies, duplicates, images, or the like are not removed or retained by any interviewee, potential witness, deponent, or hearing or trial witness), provided, however, that in all such cases the individual to whom disclosure is to be made has been informed that the information contained in the disclosed document(s) is confidential and protected by Court Order, that the individual understands that he/she is prohibited from disclosing any information contained in the document(s) to anyone[.]

(*Id.* at ¶ 6(b)(10)). Finally, the protective order allows for disclosure of such documents to "any other person agreed to in writing by the parties." (*Id.* at ¶ 6(b)(11)).

The Court reads these three specific provisions in conjunction with the introductory paragraph to this section of the protective order ("Persons to Whom Confidential Information May Be Disclosed"), which states that those persons to whom confidential information is disclosed must "agree to be bound by the terms" of the protective order; and the concluding sentence of this section, which states that "[p]rior to being shown any [confidential information], any person listed under paragraph 6(b)(3), 6(b)(4), or 6(b)(11) shall be advised that the

confidential information is being disclosed pursuant to and subject to the terms of this Protective Order." (Doc. 21 at PAGEID 193, 195). Given these restrictions, the Court finds that FleetPride's arguments invite the Court to "assume that the parties will violate the Protective Order. There is no basis to presume that such a violation will occur. This Court has repeatedly recognized that an appropriate Protective Order provides the necessary safeguards." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 97 (S.D. Ohio 2013). The Court finds that FleetPride has failed to make a sufficiently specific factual showing that it will suffer harm *notwithstanding the protective order already entered*.

Given the foregoing, FleetPride's motion to quash (Doc. 76) is **DENIED**, but the subpoena is hereby modified to request only the following:

1. The agreements between FleetPride and Dickinson relating to discounts and rebates.
2. The invoices FleetPride sent to Dickinson for maintenance service related to AWA trucks specifically identified in document number 82-1 at PAGEID 860 after November 4, 2016.

**IT IS SO ORDERED**.

Date: 6/14/2023

Karen L. Litkovitz
United States Magistrate Judge

8